**IN THE COURT OF APPEALS OF IOWA**

No. 18-2204
Filed March 20, 2019

**IN THE INTEREST OF S.B.,**
**Minor Child,**

**S.B., Mother,**
        Appellant.
_____


        Appeal from the Iowa District Court for Montgomery County, Amy L.

Zacharias, District Associate Judge.


        A mother appeals the termination of her parental rights to her child, born in

2018.  **AFFIRMED.**


        Ivan E. Miller, Red Oak, for appellant mother.

        Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

        DeShawne L. Bird-Sell of Sell Law, PLC, Glenwood, guardian ad litem for

minor child.


        Considered by Vogel, C.J., and Vaitheswaran and Doyle, JJ.

**VAITHESWARAN, Judge.**

A mother appeals the termination of her parental rights to her child, born in 2018. She argues (A) the State failed to prove the grounds for termination cited by the district court; (B) the department of human services failed to make reasonable efforts to reunify her with the child; (C) the district court should not have terminated her parental rights based on the parent-child bond; and (D) the district court should have afforded her additional time to work toward reunification.

## I.     *Background Facts and Proceedings*

The mother had six children. The district court terminated her parental rights to five of them in a separate proceeding. The court of appeals recently affirmed the termination decision. *See In re J.D.*, No. 18-1618, 2019 WL 156673, at *1 (Iowa Ct. App. Jan. 9, 2019). We noted that the mother lived with and married a registered sex offender and "continued to allow her husband to be around the children in violation of a no-contact order." *Id.*

After the sixth child was born, the district court removed her from parental custody based on the department's attestation that her father was a registered sex offender, he had not participated in treatment services, and he would pose an imminent danger to the child. The district court later adjudicated the child in need of assistance. The court reasoned, the mother "continues to exhibit behaviors that prove she lacks any protective capacity to keep ANY of her children safe." The child remained out of the mother's custody for the duration of the proceedings. The father moved out of the state to live with his mother.

In time, the State petitioned to terminate the mother's parental rights to the sixth child. The district court granted the petition pursuant to several statutory provisions. The mother appealed.

## II. Analysis

### A. Grounds for Termination

We may affirm the district court's decision if we find clear and convincing evidence to support any of the cited grounds for termination. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We will focus on Iowa Code section 232.116(1)(h) (2018), which requires proof of several elements, including proof the child cannot be returned to the parent's custody.

The mother argues she "filed for divorce" from the father and remedied sanitation concerns in her home. In her view, she was "ready, willing and able" to immediately care for her children. The district court was not persuaded. The court stated:

> The reality is that while the house was a concern and wholly unsuitable for a young child, the greater concern is the utter lack of protective capacity on the part of [the mother]. She STILL does not understand why her children were not returned to her care. She is pregnant again, with [the registered sex offender] as the reported father. [The mother] had a choice to make early on in the half-siblings' cases—her children or [the registered sex offender]. [The mother] has clearly made her choice and that is [the registered sex offender]. She married him and is now going to have another child with [him] as the father. The Court does not believe that [the mother] intends to . . . get divorced or end her relationship with [him]. She admitted to contact [with him three months before the termination hearing,] and the Court suspects ongoing contact given her current pregnancy. The Court specifically finds that [the mother's] testimony regarding her relationship, or lack thereof, with [the father] to be not credible.

On our de novo review, we discern support for these findings.

The department caseworker assigned to the case testified that, in her "professional opinion and that of . . . every professional" who "worked in this case," the mother appeared "to be an advocate for [the father] versus being an advocate for her children." Well into the proceedings, the department received information that the father traveled to the State of Iowa and stayed at the mother's home. The caseworker opined, "Although [the mother] states that she is getting a divorce, there is documented information conflicting with that intention. In addition, there are reports that [the mother] has maintained a relationship with [the father] versus establishing firm boundaries to ensure her child's safety."

Notably, the mother conceded the divorce action had not been finalized. She also conceded she was pregnant with another child fathered by the same man.

The mother's ongoing relationship was particularly troubling, given continued concerns about the father. The caseworker cited three evaluations of the father "by three separate practitioners, including a practitioner that his attorney chose for him," all "recommend[ing] that he [was] at high risk to reoffend a child and also recommend[ing] no unsupervised contact." One of the evaluation reports, based on several interviews with the father two to three months after the child's birth, stated:

> The client is at risk of reoffending in sexual contact with minors. He is not clearly accepting responsibility for the incident of the offense. He lacks firm boundaries with others and between himself and the children. Particularly concerning is the answer to the question what he enjoys most about parenting, "The hugs—lots and lots of hugs . . ." outside of any general statement about the meaningfulness of the relationship, the trust, or the satisfaction of seeing their growth and success as persons.

In light of the father's risk of reoffending and the mother's ongoing contact with him, we agree with the district court that the child could not be returned to the mother's custody. We conclude termination was warranted under section 232.116(1)(h).

### B.    Reasonable Efforts

The department is obligated to make reasonable efforts toward reunification. *See In re L.T.*, ___ N.W.2d ___, ___, 2019 WL 982910, at *7–8 (Iowa 2019). The mother does not assert the department impeded her efforts to visit the child independently. She contends she should have been afforded "share[d] visitation time" with the father through "video-conferencing software."

The record reflects that, until three months before the termination hearing, the mother had the opportunity to participate in the father's Facetime visits with the child in addition to exercising her own in-person supervised visits. The department reported that the Facetime visits ended two months before the termination hearing because the service provider could not locate the father. Accordingly, the mother's argument appears to be moot.

In any event, we find scant support for the mother's assertion that the department had an obligation to facilitate her participation in the video conferences. The request is inconsistent with her insistence that the relationship ended and is further evidence of her willingness to place her relationship with the father over the child's needs. We conclude the department satisfied its reasonable-efforts mandate.

### C.     Parent-Child Bond

The mother argues termination is not in the child's best interests, given the bond she shared with her.  She also argues the court should have granted an exception to termination based on that bond.  *See* Iowa Code §§ 232.116(2) (best interests), 232.116(3)(c) (exception to termination based on parent-child bond).  The question of a bond is more appropriately examined under section 232.116(3)(c).

There is scant evidence to establish that termination will be detrimental to the child due to the closeness of the mother-child bond.  *See In re A.S.*, 906 N.W.2d 467, 476 n.3 (Iowa 2018).  In addition, the mother's past unwillingness to protect the child and her half-siblings from the father overrode the bond she shared with the child.  Under the circumstances, we agree with the district court that "the application of an exception to termination under Iowa Code § 232.116(3)(c) is not warranted."

### D.     Additional Time

The mother argues the court should have afforded her additional time to work toward reunification.  *See* Iowa Code § 232.104(2)(b).  Like the district court, we are not convinced the mother would protect her child from the father.  Without progress on that front, additional time is not warranted.

We affirm the termination of the mother's parental rights to the child.

**AFFIRMED.**